UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROY ANTONIO LAUES-GHOLSTON,

                Plaintiff,        Civil Action No. 14-10844
                                       Honorable Mark A. Goldsmith
                                       Magistrate David R. Grand
    v.

MERCEDES-BENZ FINANCIAL
SERVICES USA, L.L.C., f/d/b/a
MERCEDES-BENZ FINANCIAL, a
business unit of DCFS USA, L.L.C.,
LAW OFFICES OF RICHARD A.
GREEN, and RICHARD A. GREEN,

                Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SANCTIONS/DISMISSAL DUE TO PLAINTIFF'S FAILURE TO COOPERATE IN DISCOVERY AND/OR COMPLY WITH ORDER COMPELLING DISCOVERY [47]**

**I.    RECOMMENDATION**

Before the Court is Defendants' Mercedes-Benz Financial Services USA, LLC and Law Offices of Richard A. Green's Motion for Sanctions/Dismissal Due to Plaintiff's Failure to Cooperate in Discovery and/or Comply with Order Compelling Discovery (the "Motion"). [47]. This case has been referred to this Court for all pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). For the following reasons, the Court recommends granting Defendant's Motion [47], dismissing Plaintiff's amended complaint with prejudice, and awarding Defendants sanctions of $750.00.

## II. REPORT

### A. Factual Background[1]

This case arises out of Plaintiff Roy Antonio Laues-Gholston's ("Gholston") January 28, 2009 purchase and financing of a Mercedes-Benz automobile, a new 2009 GL550 SUV (the "SUV"). The sales contract (the "Contract") and other purchase paperwork lists the SUV's buyer as Roy Antonio Laues-Gholston, with an address of 8557 Forestview Dr., in Canton, Michigan.[2] [47-5 at 8-11]. According to the Contract, the SUV's purchase price was $87,518, and with the addition of a few fees, Gholston financed $87,745 to buy the SUV. [*Id.* at 8-9]. Gholston was to make 60 monthly payments, each in the amount of $1,776.66, and his first payment was due on February 27, 2009. [*Id.*]. The "Creditor/Seller" was listed as Mercedes Benz of Novi, but in a paragraph towards the end of the Contract, Mercedes Benz of Novi assigned its rights to DCFS USA LLC. [*Id.* at 9]. Elsewhere in the Contract, it appears that "Mercedes-Benz Financial" is defined as including "DCFS USA LLC, its successors and assigns." [*Id.*]. Also, a separately signed provision in the Contract indicates that the buyer "acknowledge[s] receipt of a true and completely filled in copy of [the Contract]." [*Id.*].

Apparently, Gholston made the majority of the payments due under the Contract, but

---

[1] The docket in this action has been complicated by a series of improper filings by Plaintiff, including, among others: (1) an unauthorized amended complaint in which he sought to bring claims against a state court judge who ruled against him in a related matter; and (2) a "motion for declaratory judgment" which really was an attempt to serve requests for admission on this Court. [51, 52]. The Court ordered both documents stricken [54], so the only named Defendants in this action are the ones identified in Plaintiff's initial amended complaint, Mercedes-Benz Financial Services USA, LLC, Law Offices of Richard A. Green, and Richard A. Green. [10, 23]. While it does not appear that Gholston ever effectuated service of his operative complaint on Richard A. Green (and that his complaint does not actually assert claims against Richard A. Green, as his first cause of action is made only against MBFS and his second cause of action is made only against MBFS and LORG), for the reasons discussed herein, dismissal of his action, in its entirety, is appropriate.

[2] This is the same address Gholston provided to the Court as his home address. [1 at 3].

ceased making payments when the balance owing was approximately $37,000. One of the Defendants in this action, Mercedes-Benz Financial Services USA, LLC ("MBFS") then commenced a civil action in Wayne County Circuit Court against Gholston to recover the balance owing on the Contract (the "Wayne County Action"). [10 at 5; 17]. The Wayne County Action was assigned to the Honorable Maria L. Oxholm, who ordered Gholston to either turn over the SUV or deposit into escrow with the Wayne County Circuit Court a check in the amount of $37,687. [10 at 3; 17]. Gholston apparently contended that he did not know the SUV's whereabouts, and deposited in the Wayne County Circuit Court a check in the amount of $37,687. Judge Oxholm ultimately entered judgment against Gholston in that case, and the escrowed funds were turned over to MBFS. Gholston appealed the judgment in the Wayne County Action to the Michigan Court of Appeals, and that appeal is still pending.[3]

## B. Procedural Background

On February 24, 2014, Gholston filed his initial complaint in this Court against MBFS and Law Offices of Richard A. Green ("LORG"), the law firm that represented it in the Wayne County Action, alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1601 *et seq.*, related to the filing and prosecution of that action. [1]. As noted above, Gholston subsequently filed an amended complaint (which remains the operative one), in which he also named attorney Richard A. Green, individually, as a defendant in this action. [10]. *But see supra* fn. 1. In short, Gholston alleges that MBFS and LORG violated the Fair Debt Collection Practices Act, 15 U.S.C. 1601, et seq., by engaging in debt collection practices without advising him of his alleged due process rights, and by making false and misleading statements about the

---

[3] While this Court obviously cannot know how Gholston's appeal will eventually be resolved, given his conduct in this litigation, the outcome of that appeal is immaterial to Defendants' instant motion.

debt. [*Id.*]. While Gholston's complaint is somewhat difficult to comprehend, he seems to take exception with the fact that the party that sued him to collect the balance on the Contract was MBFS, as opposed to DCFS USA, L.L.C.[4] [*Id.*]. Gholston also makes a passing reference to an alleged "extortion" and "fraud," but provides no details supporting such claims. [*Id.*].

Since filing his amended complaint, Gholston has not participated in good faith in this litigation. Indeed, despite this Court's generous indulgence of his *pro se* status, and multiple warnings to him, he has participated in bad faith virtually every step of the way, and, in the process, has clearly and willfully violated this Court's orders.

      *i.*      ***Gholston Served Discovery Requests which were Designed to Harass and Embarrass the Defendants, and He Failed to Respond to Defendants' Discovery Requests***

On April 14, 2014, Gholston served requests to admit to MBFS and LORG in which he sought their admission that they and/or their representatives: (1) had improper "ex parte meetings with judges they are appearing before and secured a preconceived result via the private prior agreement with the judge;" (2) improperly bribed those judges by offering "money or other valuable consideration to influence the outcome of the proceedings;" (3) "expect courts, meaning judges to tilt the playing field in favor of so-called bar-licensed attorneys opposed by pro se litigants;" (4) have committed criminal acts including fraud, extortion, altering of records, or forgery; and (5) are aware that "the Michigan Bar Association and the American Bar Association exists [sic] and operates [sic] as a [sic] known syndicate of organized crime." [31-3; 31-4]. Defendants served their own discovery requests on Gholston, but he failed to respond.

---

[4] The Court notes that in the caption of his own pleadings, Gholston refers to MBFS as a "business unit of DCFS USA, L.L.C.," and he never takes exception with the allegation that about $37,000 was owed on the Contract at the time the Wayne County Action was instituted against him. Gholston makes no assertion that any entity other than MBFS has attempted to collect the balance owing on the Contract, or that MBFS' actions have subjected him to a risk of paying that balance to more than one creditor.

4

Gholston's abusive tactics and failure to participate in discovery caused Defendants to file a motion asking the Court to hold a status conference, as well as a motion to compel Gholston to produce discovery. [31, 32].

> ii. *The Court Held a Hearing, Admonished Gholston about His Behavior, Explained to Gholston His Obligations as a Litigant in this Court, and Warned Him that His Failure to Meet those Obligations Could Lead to the Dismissal of His Action*

Whereas the Court might normally attempt to resolve a motion to compel like the one Defendants had filed informally with both parties, it scheduled a hearing so that it could address the motion and discuss with the parties the Court's expectation for how they would conduct themselves as litigants. [34]. Gholston's response to Defendants' motion to compel did not address his failure to provide the requested discovery. [35]. At the September 4, 2014 hearing, Gholston offered no valid reason for failing to provide discovery to Defendants, and the Court granted Defendants' motion. [37]. The Court advised Gholston that while it could impose sanctions for his failure to provide the discovery, due to his *pro se* status, it would take that matter under advisement with the expectation that Gholston would conduct himself appropriately going forward and that no sanctions would be necessary. In addition to warning Gholston on the record about the consequences of his refusal to comply with his discovery obligations, in a written order memorializing its ruling (the "Order"), the Court expressly warned Gholston that his failure to provide "full, complete and truthful responses to Defendants' discovery requests" and to conduct himself properly during this litigation "**MAY RESULT IN THE COURT ISSUING A RECOMMENDATION THAT HIS CASE BE DISMISSED.**" [37 at 2 (emphasis in original)]. Unfortunately, Gholston did not heed the Court's warning.

### iii. *Gholston was, at Best, Extremely Obstructionist During His Deposition, and at Worst, Gave False and/or Misleading Testimony*

The Court granted Defendants' request that Gholston's deposition take place in the federal courthouse, and the parties appeared as scheduled for the deposition on September 25, 2014. [*Id.* at 1]. Defendants' concerns with how Gholston would behave at the deposition proved to be well-founded; his bizarre and obstructionist conduct during the deposition necessitated the Court convening a hearing in the middle of the deposition in which the court reporter read portions of Gholston's testimony into the record. The following clearly demonstrates Gholston's bad-faith behavior during his deposition:

> Q. Have you brought any of the documents that were requested on Exhibit 1 with you to court today?
> A. I'm not in receipt of any correspondence or memorabilia, notes, written communications or any other documents which verify I had a contract with Mercedes-Benz Financial Services USA LLC or that I owe Mercedes-Benz Financial Services USA, LLC any money.
>
> Q. Okay. That's not the question though.
> A. That's my answer.
>
> * * * *
>
> Q. Mr. Gholston, can you please state your legal name for the record.
> A. Roy Antonio Laues-Gholston.
>
> * * * *
>
> Q. Did you go by Roy Laues at some point?
> A. I go by Roy Antonio Laues-Gholston.
>
> Q. No other names?
> A. As it's written down and submitted to the Court, it's Roy Antonio Laues-Gholston.[5]

---

[5] Gholston is the plaintiff in a similar Eastern District of Michigan civil action against his mortgage company in which he identifies himself as Roy Laues. [47-9].

6

\* \* \* \*

Q. And are you currently employed?
A. No.

Q. And how long have you been unemployed?
A. [] As far as employment is concerned, employed/unemployed, I'm neither.

Q. What does that mean?
A. I'm not employed, I'm not unemployed as it relates to your definition, and it's irrelevant.

Q. How do you earn a living then if you're unemployed?
A. I don't earn a living. I live.[6]

\* \* \* \*  [7]

A. …It has nothing to do with whether I'm employed or unemployed, which I am not employed as defined by tax laws and standards, so as far as employment is concerned, I am neither.

Q. What does that mean as defined by tax laws?
A. I'm not going to give you an education on taxes right now.

Q. …How do you earn a living to support yourself and your family?
A. I don't earn a living. I live by my work product.

Q. Okay. What's your work product?
A. Those things that I do that are not tax related or that are not taxable, those are my work product.

\* \* \* \*

Q. Mr. Gholston, have you ever filed a bankruptcy proceeding in the court in Michigan or in any other state in the United States?
A. Not that I have knowledge of at this moment.

---

[6] Gholston testified that for at least one prior year he did not file a tax return, and that he did not remember when the last time was that he filed one. [47-7, Gholston dep. at 26].

[7] There was then a dialogue between counsel, Gholston and Gholston's wife, who was allegedly coaching Gholston during the deposition. The transcript and information provided by counsel during the hearing make clear that Gholston was unreasonably delaying the completion of his deposition by taking an excessive amount of time to answer simple questions as he thumbed through a list of legal jargon on an iPad after each question.

7

> Q. Isn't it true that in fact you filed a bankruptcy in 1988 along with Ronda Ann Laues?
> A. I don't have any documentation or information that would cause me to remember something to that extent. I would have to do my own research in order to get that information for you.
>
> Q. Okay. Mr. Gholston, do you recall purchasing a 2009 MGL550 automobile in January 2009?
> A. I do not have any information that would lead me to believe that I did that.

[47-7, Gholston dep., pp. 8-17].

At this point, Defendant's counsel advised the Court's staff of Gholston's behavior, and the Court held a hearing in which Gholston, his wife, and Defendants' counsel were present. The Court reporter read most of the foregoing testimony to the Court, and the Court admonished Gholston about his obligation to cooperate in the deposition, and answer counsel's questions truthfully. The Court again expressly advised Gholston that his failure to cooperate could result in sanctions, including the dismissal of his action. The deposition was then continued. Unfortunately, as the following post-hearing deposition testimony shows, Gholston's level of cooperation did not improve:

> Q. Have you previously been married?
> A. Yes, I have been previously married.
>
> Q. What was your prior wife's name?
> A. I do not remember.
>
> Q. How long were you married for?
> A. I do not remember.
>
> Q. So you're refusing to answer the question?
> A. I do not remember.
>
> * * * *
>
> Q. Have you ever purchased a Mercedes-Benz vehicle from Mercedes-Benz of Novi?
> A. I don't remember.

8

> Q. Where do you recall purchasing or leasing a Mercedes-Benz vehicle from?
> A. I can't recall right now.
>
> * * * *
>
> Q. [Looking at the Vehicle Purchase Order] Can you tell me what address is below that name?
> A. I can't read that.
>
> Q. Can you see the street name?
> A. No, I can't make it out. Sorry.
>
> Q. In the courtroom you indicated you had your glasses with you. Perhaps it would be easier if you put your glasses on.
> A. Okay.
>
> Q. Can you see the address on the second line below the buyer's name.
> A. Yes.[8]

[47-7, Gholston dep. at 21-34].

### *iv. Gholston Violated the Court's Order by Failing to Meaningfully Respond to Defendants' Written Discovery*

On June 19, 2014, Defendants served Gholston with requests for production of documents, interrogatories, and requests for admission. [47-5]. These requests were straightforward, and not at all voluminous (13 Requests for Admission, 8 Interrogatories, and 7 Requests for Production). As a result, the Court, in its Order, had granted the Defendants' motion to compel, ordered Gholston to "provide full, complete and truthful responses to Defendants' discovery requests," and expressly warned him that his failure to do so "**MAY RESULT IN THE COURT ISSUING A RECOMMENDATION THAT HIS CASE BE DISMISSED.**" [37 at 2 (emphasis in original)]. Despite that warning, Gholston clearly violated

---

[8] In other words, Gholston, rather than simply putting on his glasses so that he could answer counsel's questions to the best of his ability as he had been instructed, was content to impede his own ability to meaningfully participate by not utilizing his glasses.

the Court's Order by obstinately failing to meaningfully answer the discovery.

### a. Defendant's Requests for Production of Documents[9]

Gholston failed to provide meaningful responses to Defendants' requests for production of documents. For instance, in response to Defendants' request for production No. 1 which sought "all written correspondence [and other documents] which refer to or in any way relate to the Contract and/or [SUV]," Gholston responded only that he "is not in receipt of any written correspondence [or other documents] which verifies that he had a contract with MBFS or that he owed MBFS any sum of money." Gholston's response does not answer the question of whether he has documentation related to the Contract, and demonstrates his complete refusal to meaningfully participate in discovery in this action. The requested documentation is clearly relevant and material to (and potentially dispositive of) his claim which concerns actions MBFS took to recover amounts Gholston allegedly owed on the Contract. Similarly, in response to Defendants' request No. 3 seeking documentation related to payments Gholston made on the Contract, Gholston wrote that he, "has no documents in his possession which validate that he had a contract with MBFS or that he owed MBFS any sum of money." Again, Gholston's contention that he has no documents which "validate" a contract between he and MBFS is immaterial to the request that he was required to answer. By failing to meaningfully answer Defendants' requests for production of documents, Gholston clearly violated the Court's Order.

### b. Defendants' Requests for Admission

Gholston's responses to Defendants' requests for admission ("RFA") also clearly violated the Court's Order. For example, in response to Defendants' RFA No. 1 which simply asked Gholston to admit that he "executed the Contract" (a copy of which was attached to the

---

[9] Defendants' discovery requests and Gholston's responses are contained in Docket #s 47-5 and 47-6, respectively.

requests), he answered: "Irreleveant [sic]. The exhibited contract is not between Plaintiff and MBFS." [47-6]. But whether the Contract itself is between Gholston and MBFS is immaterial to the request. Even if MBFS was not a party to the Contract, it could have, for example, acquired or been assigned rights thereunder. However, particularly in light of the lack of candor Gholston has displayed throughout discovery, one fact that is important to establish in this action is that *he* was a party to the Contract. RFA No. 1 was aimed at establishing exactly that most basic fact, but Gholston obstinately refused to answer it. Similarly, in responding to RFA Nos. 2-6 regarding whether Gholston executed the Title Application, financed his purchase of the SUV, and whether the signatures on the Contract and related documents were Gholston's, he gave the following non-responsive answer: "The exhibited contract is not between Plaintiff and MBFS." And, when asked to admit in RFA Nos. 7 and 8 that he "borrowed $87,754 to purchase the [SUV] under the Contract," and "failed to make all payments required under the Contract," he answered only that he did not borrow money or owe payments "to MBFS." Again, MBFS had a right to Gholston's honest answer to these RFAs, and his evasive and non-responsive answers clearly violate the Court's Order.

### c. *Defendants' Interrogatories*

Gholston's responses to Defendants' interrogatories are equally evasive and obstructionist. For example, Interrogatory No. 3 asked Gholston to identify the various payments he made on Contract. However, rather than providing a meaningful answer, Gholston responded: "Irreleveant [sic]: Objection: The interrogatory cannot lead to the production of evidence that would be admissible at trial." For the reasons discussed above, this objection and answer is baseless and violates the Court Order. Gholston made the same response to Interrogatory No. 2, which asked him to identify doctors who treated him for physical or mental

conditions which he was claiming resulted from Defendants' alleged conduct and for which he was seeking compensation in this action.[10] Again, Gholston's response is baseless; the information sought is clearly relevant as Defendants have a right to investigate Gholston's claimed damages. Gholston's responses to Interrogatory Nos. 6 and 7, which merely inquired about the amount of the Contract balance as of a particular point in time (presumably the date of default), are virtually indecipherable. Gholston responded to each: "Plaintiff contends that the contentions of MBFS and LORG repeated a pattern of attempting to collect a false debt for a principal where the principal was not a bona fide holder-in-due-course." Gholston clearly failed to answer Defendants' interrogatories in violation of the Court's Order.

> ***v.   Defendants Moved to Dismiss Gholston's Complaint as a Sanction for His Discovery Abuses, and Gholston Failed to Meaningfully Respond to that Motion and Failed to Appear at the Hearing on the Motion***

On October 10, 2014, Defendants filed the instant "Motion for Sanctions/Dismissal Due to Plaintiff's Failure to Cooperate in Discovery and/or Comply with Order Compelling Discovery." [47]. In their Motion, Defendants aptly lay out the history of Gholston's abusive and obstructionist behavior in this action, and seek, as a sanction, the dismissal of his action and a monetary award. On November 7, 2014, Gholston responded to Defendants' Motion by filing an "Opposing Affidavit to 'Motion for Sanctions/Dismissal' Dkt. #47 Pursuant to 6(c)(2)" (the "Response"). [60]. However, Gholston's Response fails to address any of the factual or legal arguments raised by Defendants, and instead asserts baseless objections, such as that this Court lacks subject matter jurisdiction over the Motion.[11] Gholston did not attend the November 14,

---

[10] For instance, Gholston seeks emotional distress damages in this action. [10 at ¶¶ 4, 6].

[11] Gholston also objects to the fact that the Motion was filed by Defendants MBFS and LORG, but not Richard A. Green. However, as noted above, it does not appear that Gholston ever served Richard A. Green with process. At any rate, there is no requirement that all defendants to

12

2014 hearing on the Motion.

### C. Analysis

#### i. Dismissal is Warranted as a Sanction for Gholston's Non-Compliance with the Court Order

Federal Rule of Civil Procedure 32(b)(2) provides:

**(2) Sanctions Sought in the District Where the Action Is Pending**.

> (A) For Not Obeying a Discovery Order. If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
>
> > (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> >
> > (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> >
> > (iii) striking pleadings in whole or in part;
> >
> > (iv) staying further proceedings until the order is obeyed;
> >
> > (v) dismissing the action or proceeding in whole or in part;

---

an action join in a motion before the Court may consider it. Gholston also objects on the grounds that "MBFS and LORG … did not ascertain whether the contemplated motion [] would be opposed. Richard A. Green [] did not contact me to obtain concurrence." It is unclear whether Gholston is contending that he was not contacted by any party prior to the Motion being filed, or that he was contacted by MBFS and LORG (but that they filed the Motion before receiving his response) but was not contacted by Richard A. Green. Ultimately the issue is irrelevant, as Gholston alleges no prejudice from any failure to contact him prior to filing the Motion, and because his prior obstructionist behavior makes it highly implausible that he would have concurred with the relief sought in Defendants' motion. Finally, Gholston states that he "oppose[s] and object[s] to the alleged deposition [as he] was under duress to attend under threat by the Magistrate Judge if I did not answer properly I would meet sanctions." This objection is baseless; the Court's warning Gholston of his obligation to answer deposition questions truthfully, and of the consequences of his failure to do so, can hardly be considered placing him under "duress," and does not excuse his behavior at the deposition.

> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2).

As the Sixth Circuit recently explained:

> Under Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure, "a district court may sanction parties who fail to comply with its orders in a variety of ways, including dismissal of the lawsuit." As the magistrate judge correctly observed, we consider four factors when reviewing a district court's dismissal under Rule 37(b): "(1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered." "Although no one factor is dispositive, dismissal is proper if the record demonstrates delay or contumacious conduct."

*Universal Health Group v. Allstate Ins. Co.*, 703 F.3d 953, 956 (6th Cir. 2013) (internal citations omitted). Here, all four factors favor dismissing Gholston's complaint.

First, Gholston's obstructionist conduct has clearly been willful and undertaken in bad faith. Gholston served discovery requests that were salacious and intended to harass and inflame Defendants and their counsel, *supra* at 4, who admirably have remained exceedingly professional in their interactions with Gholston.[12] Gholston gave testimony which was, at best, obstructionist, and at worst, intentionally false and/or misleading. For instance, it is completely implausible that Gholston did not recall his prior wife's name and did not recall filing for bankruptcy. His testimony that he is neither employed nor unemployed and that he does not "earn a living," but

---

[12] The Court bases this finding on its participation in telephone calls and hearings with Gholston and Defendants' counsel, and on its thorough review of Defendants' counsel's filings in this matter. Defendants' counsel never once raised his voice or resorted to *ad hominem* attacks on Gholston.

14

rather "lives by [his] work product," which he would only describe as "[t]hose things that I do that are not tax related or that are not taxable," is at best a game of semantics which has no place in litigation, and at worst, an intentionally evasive answer to counsel's questions. Either way, Gholston's answer violated his obligation to truthfully and forthrightly answer counsel's questions.[13] Gholston's responses to Defendants' written discovery requests are just as evasive and in bad faith. Even after being ordered to provide "full, complete and truthful" responses to Defendants' discovery requests, Gholston flatly refused to do so. *Supra* at 9-12. Instead, he gave non-responsive, evasive answers that have a clear air of smug gamesmanship to them. Gholston's conduct cannot be overlooked on the grounds that he is an unsophisticated *pro se* litigant; the Court, on more than one occasion, patiently explained to Gholston his discovery obligations and the need to forthrightly answer Defendants' particular discovery requests and deposition questions. Gholston's failure to do so notwithstanding those admonitions shows his willfulness and bad faith. Thus, this first factor favors dismissal as a sanction.

Second, Defendants have been prejudiced by Gholston's conduct. They have expended considerable time and financial resources defending themselves against Gholston's claims, only to have him repeatedly and intentionally stonewall their efforts at every turn, and drive up their litigation costs. That alone shows ample prejudice. Moreover, discovery in this action recently closed, and because Gholston has refused to provide Defendants with basic information related to his claims and/or their defenses Defendants would be forced to file a dispositive motion without the benefit of any of the discovery they sought from Gholston. Thus, this factor favors dismissal.

---

[13] Particularly when coupled with his testimony that he did not file at least one year's tax return and cannot recall the last time he filed one, Gholston's testimony also raises questions about his compliance with federal tax filing and reporting requirements.

Third, as noted above, the Court has, both in writing and orally, warned Gholston that his complaint could be dismissed as a sanction if he failed to abide by the Court's Order and failed to meaningfully participate in the discovery process. Indeed, the Court could not have been more clear that Gholston's failure to provide "full, complete and truthful responses to Defendants' discovery requests" and to conduct himself properly during this litigation "**MAY RESULT IN THE COURT ISSUING A RECOMMENDATION THAT HIS CASE BE DISMISSED.**" [37 at 2 (emphasis in original)]. Unfortunately, notwithstanding that very clear warning, Gholston's obstructionist behavior not only persisted, but escalated throughout the discovery process. Thus, this factor also favors dismissal.

Finally, the Court has considered sanctions less drastic than dismissal, but finds that none of them would sufficiently address Gholston's conduct or deter him from behaving similarly in the future. The Court has already been extremely generous with Gholston. It has taken time to ensure that Gholston understood what was required of him in terms of his conduct in this litigation, and particularly with respect to his discovery obligations. It was lenient in not awarding sanctions against him when he failed to provide any response to Defendants' discovery requests. And the Court expressly warned Gholston of his last chance to comply with his discovery obligations. Notwithstanding all of those indulgences, Gholston has made it abundantly clear that he has no intention of complying with this Court's orders or in participating in this litigation other than on his own distorted and abusive terms. This final factor therefore also favors dismissal.

While the Court recognizes the sanction of dismissal's extreme nature, in light of the foregoing it is unquestionably warranted here. *Universal Health*, 703 F.3d at 956. Thus, the Court is recommending granting Defendants' Motion [47] and dismissing, with prejudice,

Gholston's amended complaint.

### ii. *Non-Monetary Sanctions Are Warranted*

The Court is also recommending the imposition of an appropriate monetary sanction. At the hearing on Defendants' initial motion to compel, and in its Order granting that motion, the Court expressly indicated to Gholston that, due to his failure to produce any responses to Defendants' discovery requests, it was "tak[ing] Defendants' request for [$750 in] sanctions in connection with [that motion] under advisement." [32 at ¶15; 37]. While the Court was hopeful that its warning, and threat of the sanction for Gholston's prior conduct, would result in his compliance on a going-forward basis, that hope turned out to be only wishful thinking, as Gholston willfully violated the Court's Order and attempted to make a mockery of the discovery process, as discussed above.

Federal Rule of Civil Procedure 37(a)(5)(A) provides:

> If [a party's motion to compel] is granted--or if the disclosure or requested discovery is provided after the motion was filed--the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>
> > (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
> >
> > (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
> >
> > (iii) other circumstances make an award of expenses unjust.

Defendants prevailed on their motion to compel, and none of the exceptions to awarding sanctions apply with respect to that motion. Defendants certified that they made a good faith attempt to resolve the issue without need for the motion [32 at ¶12], and Gholston was not

17

"substantially justified" in his position – refusing to produce discovery. Moreover, awarding Defendants the modest, and clearly reasonable sum of $750 requested in their motion to compel is not unjust. In addition to Gholston's bad-faith conduct described above, the Court considers that he appears to have substantial assets; he purchased an $87,000 automobile, re-paid the majority of the loan, and then (fairly recently) deposited with the Wayne County Circuit Court an escrow check for the approximate $37,000 loan balance. Gholston attended the hearing on the motion to compel and had an opportunity to address the Court regarding Defendants' request for sanctions. Finally, at the hearing on Defendants' instant Motion (which Gholston elected not to attend), Defendants' counsel represented that Gholston had recently claimed to be a "millionaire." Accordingly, the Court recommends awarding $750.00 against Gholston to cover the reasonable fees Defendants incurred in connection with their motion to compel.

In their instant Motion, in addition to requesting dismissal of Gholston's complaint, Defendants request that the Court impose monetary sanctions against Gholston under Fed. R. Civ. P. 37(d)(3). [47 at ¶22]. However, Rule 37(d)(1)(B) provides that in order to receive an award of monetary sanctions under Rule 37(d), the requesting party's motion "must include a certification that [it] has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action." *See* Fed. R. Civ. P. 37(d)(1)(B). As Defendants' instant Motion does not contain such a certification, sanctions under Rule 37(d) are unavailable to them, and the Court declines to *sua sponte* order any sanctions other than those recommended above.

### III.  CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS GRANTING DEFENDANTS' MOTION FOR SANCTIONS/DISMISSAL DUE TO PLAINTIFF'S FAILURE TO**

**COOPERATE IN DISCOVERY AND/OR COMPLY WITH ORDER COMPELLING DISCOVERY [47] and DISMISSING PLAINTIFF'S AMENDED COMPLAINT WITH PREJUDICE.** The Court further **RECOMMENDS ORDERING PLAINTIFF TO PAY $750.00 IN SANCTIONS TO DEFENDANTS**.

Dated: November 28, 2014  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via email addresses the court has on file.

        s/Eddrey O. Butts
        EDDREY O. BUTTS
        Case Manager

Dated: November 28, 2014